Appellant, Ms. Dyer for the Appellant, Ms. Bragg for the Appellee. Good morning, and may it please the Court, Beverly Dyer on behalf of Clyde Rattler, and I'd like to reserve two minutes for rebuttal. The District Court erred in finding that it was unfair to allow Mr. Rattler to testify that he did not recall his prior palm prints having been taken in the course of his contacts with the criminal justice system. During the fingerprint expert's testimony, when defense counsel objected to the introduction of prejudicial testimony about an arrest, counsel did not concede anything about the evidence of the prior palm print as a factual matter. Counsel made clear to the Court that the purpose of the objection was to stop the expert from blurting out anything about an arrest. The government could have established proof of the prior print through documentary evidence without linking that print to an arrest, in which case defense counsel would have had no basis for objecting to the introduction of that evidence. But instead of admitting the documentary evidence, the government elected to show that the prior palm print was Clyde Rattler's by eliciting the expert's testimony that it was both known and uncontested. On appeal, the government seems to equate evidence of an arrest with evidence of the known truth. But the two are not the same, and the government also appears to interpret Rattler's trial objection to prejudicial testimony about arrests with any agreement that might have occurred regarding the factual nature of the known print, which the record does not show that there was an agreement. Certainly, if the government had believed that Rattler had agreed off the record as to how to characterize the palm print, it could have sought a stipulation to that effect. And there was no such stipulation in this case, as is clear from this Court's cases, such as Gilliam and Harrison. Gilliam is 1999, Harrison is 2000, and Canoe, which is 2012, all of which discuss the nature of stipulations. Here, if Mr. Rattler wanted, during his own defense, to open the door to prejudicial testimony, that was his right. And it was not the government's right to open that door during its fingerprint expert's testimony. But even when the government can't, defendant can, and he can take the risk that doing so might be more harmful than helpful if the government… So this is all about what happens on redirect, right? Yes. So I'm a little, I'm hearing sort of a more cosmic argument about it being a constitutional violation. He had an opportunity in his direct to say, I've never put in my palm print, this is impossible. So he had a complete and fair opportunity to testify on his own behalf, and he didn't testify at that point. I think he might have believed that the risk of doing so because of the prejudicial evidence that the government might put in as a result. What prejudicial evidence? Evidence of arrest, prior arrest. That was also on direct. On direct, classic example, his defense counsel did exactly the right thing, take out the sting. Isn't it true you were arrested, you have three bank robberies? Yes, sir, I'm that Mr. Rattler. But at that time, counsel may not have recognized the extent to which the government would focus on the palm print during its cross-examination of Rattler. And once the government had done so during cross… I don't understand the… Excuse me. They focused on it, they put a fingerprint witness in particularly to testify about the palm print. So it doesn't seem like there was any surprise that the palm print was going to be an important factor here. I don't think there was surprise that the palm print was going to be an important factor. But there was clearly a very, probably a very close calculus about risks versus benefits of testifying that he did not recall his prior palm print having ever been taken. And that calculus might have shifted during his cross-examination in terms of the benefits outweighing the risks. I mean, I'm quite interested in sort of some theory here about whether it's a constitutional violation, whether it's not, whether harmless error applies, whether it doesn't, whether Taylor balancing applies, etc. So if we thought that the district court was correct that this was outside the scope of the cross, then what is, is that, would that be the end of the matter from your point of view? I know you don't agree with that, but if that were the case, it was outside the scope. Well, we don't even agree that the district court found. I appreciate that. Made that finding. I want you to make all hypothetical from your point of view. If we thought that's what, why the district court cut off the redirect because it was outside the scope, would that be the end or would there still be more to be talking about? We have not briefed that, that, that argument that it was within the scope. So we, it's not. Well, you know, you, you say it was within the scope of, it was within the, that was within the scope of cross. That is what the cross was about. And therefore, redirect was appropriate. Right. So, so we don't breathe, even if it was outside the scope. That's why I'm asking this. So, so I guess basically what I'm asking, this is a obviously standard evidence rule. You only get redirect if it's opened on cross. Right. So if it wasn't opened on cross, are you saying that the standard evidence rule is unconstitutional, wrong, et cetera? Or would you agree under those circumstances that would be the end of the matter? I don't agree that it would be the end of the matter. I think it would be, we would have a slightly higher hurdle to meet in terms of showing that the district court abused its discretion in excluding the testimony. I think that Rattler still has a right to present his defense and that there should be some consideration of even if he wants to admit something during redirect of, of the. So is there, that's what I thought you would say. All of our cases about this are about if, sort of, even if there were an error, then the question is, do we apply Chapman or Kodiakis, right? Do we apply the constitutional rule or do we apply the non-constitutional rule? And those all say that an error in applying an evidentiary rule that rises to the level of depriving someone of a fair trial, then we apply Chapman. But I haven't found a case where the question is simply, well, the judge correctly applied the evidence rule, but the defendant has something really important he wants to say anyway. Are there any cases about that? I don't know, and I have not looked for those cases, and that's a very interesting question. And I do. Just even more broadly, is there any case, do you think, in which, in which a judge's correct application of a rule of evidence could be deemed an abusive discretion? I think there's a question about a correct application of a rule of evidence and whether it is correct in the circumstances where it is limiting a defendant's right to present a defense. And I think that the calculus or the way in which this court should apply should at least encompass… I see your point, and if counsel had made an argument at the time to that effect, that that might be such a case. That the testimony was relevant and critical to the defense? That it's really depriving him of his defense. I guess I don't see that he needs to do more than ask for the evidence to be admitted and give a proffer as to what that evidence would be so that the court has some way of evaluating how important it is to the defense. I've never seen a case where it is required for counsel, in order to preserve a right to present a defense, has to say to the court, but you are cutting off my right to present a defense. Well, if there's no doubt about the court correctly applying one of the rules of evidence, then the counsel would have to come back with something. Well, my argument then is what is correctly? Well, that's begging the question because Judge Garland hypothesized it was a correct… Well, I guess my argument is it would be correct but for the fact that the defendant has a right to present a defense, and if it's critical evidence to the defense, then the court should look more carefully at whether it should be excluded even in those circumstances, whereas beyond the scope. And I do think here that the evidence was critical to the defense. The defense was essentially misidentification. But his only testimony, just not to be clear, is that what he wanted to say was, I don't remember being palm printed. That's all he was going to testify, right? That's all he was going to testify, but his counsel twice tried to expand on that, and the district court cut counsel off. That's in line 17. In what direction? Excuse me? In what direction expanded? He said it was impossible because, and he said it was impossible because he wants to say, and the district court interrupted twice. That's in line 17 to 24, I believe, on page 300 of the ECF file in the appendix. And so I'm not sure counsel had an opportunity to fully give the proffer. Well, is there anything? The only thing he did proffer was he was going to say, I don't remember being palm printed. Do you have another proffer? I mean, we can't just say, I mean, that sounds like all he was going to say to me because that's all I can read. That's all that was put on the record. Right. And you don't have another proffer that there's something else he could have said. I don't have that at this time for this court. But I do think that even that testimony, the government's only physical evidence in this case was the palm print and grainy photographs. There was no physical evidence of money or the clothes that he wore. So he, the palm print, that's why the palm print was, became so critical to the case. Actually, I think it was the failure of the two tellers to identify him. Well, that is one reason that the evidence was not overwhelming. And also, the jury here did not immediately come back with a verdict suggesting that the evidence, I mean, the trial was a day and a half, and the jury deliberated for a full day or the equivalent of a full day, one afternoon and one morning. And as the court is well aware, it asked questions both about the palm print, the known palm print, and about the photographs. What did defense counsel say immediately after the district court said, I think it would be unfair? If you remember. I mean, I can go back and look. I thought you might remember directly. I should remember. Because the way your brief reads, we would have to say that even though the district court was not asked to make any of these findings that you say it should have made, because it had to do with the right to present a defense, would we have to say, along the lines that the chief judge was exploring with you, that there was a manifest miscarriage of justice? I think that this court does not have to reach any of those questions under Taylor, or if it finds that the district court was incorrect in finding that it was unfair at all. And that is not as clear in our briefs as it could have been, but I think that the court should reach the argument whether it was even unfair, when all counsel was trying to do during the fingerprint expert's testimony was to prevent the introduction of prejudicial evidence of arrests. And the government could easily have put in evidence of the prior print without mentioning arrests during its opening case and did not do so. I don't know, though, given what you just discussed about the nature of the evidence, why isn't the government going to focus on the print? I mean, that's its case. We recognize that the print is important to the case, and that must have been clear throughout the case. But that does not mean that the defendant necessarily was going to open his... I just don't understand that. I don't understand why you wouldn't. If you think that really the only evidence in your view, by the way, it's clear, it seems to me that a teller who saw the person for 20 seconds is a less reliable witness than somebody who has met with, like, the probation officer and the court clerks who have met with him many times and know exactly what he looks like and can look at the picture is a better witness. But leaving that aside for the moment, in your view, the worst evidence against him is the palm print. And how could he not then open his direct by saying, I was never in the bank and I have never given my palm print. I don't remember giving anyone my palm print ever. I don't understand how it could be saved for later. Well, I think the calculus was very close on risks versus benefits. That's my estimation. But that's one of the things the district court did not ask about. If it really was unfair for counsel to try and get it in on redirect, then this is where the question of manifest injustice would come out. If this court were to reverse and it were unfair and the district court was correct that it was unfair to try and bring it out on redirect, this is assuming it's within the scope, then the court, in order to outright reverse, would have to find manifest injustice, I believe, or that the penalty was unnecessarily harsh. But I think that if the court does not reach that finding, then it should remain because there should have been inquiry into exactly this question. What was counsel thinking? This is not a question of subjective view of the counsel here. This is really an objective question for the court. But I have to say, now asking the same kind of question, have you ever seen a case, is there any case where this Taylor idea of balancing has ever been applied where the court hasn't said they were sanctioning for something? The district court is not saying I'm sanctioning you for violating some rule. Correct. Nothing like that. Now, the Gray-Burris case that I was on, that was a sanction for violation of Rule 16, which we said you can't do that without this weighing. As most of them are. And my use of those cases is really to analogize it to a situation where this was a sanction for something unfair because the court must have accepted the government's representation that it was uncontested and that somehow the defense had changed its position. I don't think it's clear from the record that the defense changed its position, and that's why I don't think it was unfair, and I don't think the defense had any obligation to correct the representation that was uncontested during the government's case in chief. But I do think that if this court finds that it was unfair because the prosecutor's representation showed something, the defense changed its position, then it is akin to a sanction. When the district court says it's unfair, it's sanctioning the defendant. That's why I think those cases are not directly on point, but they are at least relevant. Under a Rock v. Arkansas kind of analysis of how much should the defendant's testimony, when can a court limit a defendant's testimony, and when is it arbitrary? And if the court has no further questions, I would save your time. I don't have any time, but hopefully the court will give me a minute. Thank you very much. Good morning. May it please the court. Sharon Sprague on behalf of the United States. The trial court here did not abuse its discretion by sustaining the government's beyond-the-scope objection to the defense counsel's redirect questioning on a matter that had not previously been explored by either party and which the defense counsel had specifically asked the government to avoid. There are a couple of foundational questions here. Do you think we would have thought there was no agreement on the record on that? I would dispute that, Your Honor. It could have been clearer, and perhaps our trial attorney might seek a stipulation next time, but I think the record does reflect that there was an agreement between the two. The defense elected, essentially, not to have the government prove up the existence and the background of the known print. And this is reflected when it first came up in court when the fingerprint expert was being examined. And the AUSA started to ask a non-leading question of his witness, what is a known, and then corrected himself, remembering I would infer the agreement with defense counsel, corrected himself and asked a leading question. A known print is such and such. What if there were no agreement that he had done that? I'm sorry? What if there were no agreement but he had done that for other reasons? No, if there was no agreement, he would have brought in a witness to establish that the known print was legitimate and that when and how it was taken. It would be inexplicable if there were no agreement. It would be inexplicable if there were no agreement. And I'd like to point the court out, point to some pre-trial status hearing testimony that I came, or colloquy that I came across while preparing for oral argument. In the pre-trial hearings, status hearings leading up to trial. Do we have that? It's not in the appellant's appendix. It's, of course, in the record because it was before the trial court, and I'm happy to make it a part of the. . . Do you have it here? I do. Can you give a copy to defense counsel while we're talking? Yes, and I called defense counsel a couple days ago and told her about it. Fair enough, then. Yep, that was the first thing I did. Don't like to hide the ball. Anyway, in those pre-trial conferences, it became clear that the government handed over all the fingerprint evidence, photocopies of the known palm print, and the defense counsel said he might want to have his own expert look at them, so he wanted originals. Counsel agreed to provide them within two days and did so. What's reflected on the transcripts themselves is that colloquy that I'm going to have. . . By Sean Moore saying I'm getting these prints, I'm going to have my expert look at them. So we know for a fact that the defense counsel had the prints. Could you submit those to us today? Yes, I'd be happy to, Your Honor. We know for a fact that the defense counsel had those prints, that everyone had those prints. The court had presided over a discussion in pre-trial discovery matters about making sure everyone had this stuff. So there was no question that the defense counsel knew about the palm print, knowing that the government did have a known palm print from the defendant. And when you see the fingerprint card, you can see exactly when it was taken and that it was from a prior arrest, which is what the AUSA said at the bench when first talking about this with respect to the fingerprint expert. Knowing that the government did have that known palm print, knowing that it was from an arrest which was different than the three or four convictions that were going to be used for impeachment, and seeing only downsides to an airing of that evidence, I would submit the defense counsel made a strategic choice to accept the known as uncontested. And that's why the fingerprint officer who would have come in to testify about the known wasn't even on the government's witness list from the beginning. So at trial, what was the consequence or the result of that agreement? The government did not prove up the known print in any way, only used the shorthand known uncontested print and had the officer explain what that meant. That was the quote leading through the minefield that defense counsel specifically told the court at the bench he wanted to have happen as opposed to having the arrest revealed. And, of course, I direct the court to the appendix at 199-200 for that. There he told the court, of course, initially sustained the objection thinking the objection was to a leading question. And the defense counsel set her straight and said, no, if he was about to blurt out something that he shouldn't, I don't object to Mr. Cole leading him through the minefield. And I would submit that right there, that language is the agreement. And then he cements that agreement further by saying after the prosecutor said, he explained what it was, it was just a prior arrest, it was just an uncontested prior exam. The defense counsel says, in other words, in this case, I would rather have him lead briefly in this area so that they don't hear about this arrest. So the defense counsel says, in other words, the defense counsel isn't disputing what the government has said. Instead, the defense counsel is simply trying to amplify on it and says, this is what I would rather have happen. So I think the record as it is, without a stipulation, makes clear that there was an agreement. The consequences of that agreement were that the government didn't prove up the known, the defense counsel didn't question the fingerprint expert about the known, and importantly, did not ask his client, the defendant, on direct about the known. When it came time for the prosecutor to ask the defendant about the known on cross, the prosecutor stayed within the party's agreement while cross-examining the defendant. He simply had the defendant repeat his direct testimony that he had not gone to the bank and that it was therefore, quote, impossible for his palm print to be on the front door. That's at 294. He did not, there was no question about is it impossible for your fingerprint to be on that fingerprint card that we've all seen and characterized as a known print. And then it was out of the blue that defense counsel on redirect asked about how the known was acquired and that prompted the beyond the scope objection. Appellate suggests that the court may not have decided on a beyond the scope basis and I would suggest that that reading is not supported by the record. The objection by the prosecutor was, quote, beyond the scope. That's what the trial court was asked to rule on and fairness was discussed because fairness was an aspect of this legal question. It was unfair that the defense counsel was trying to expand the scope, both of the case as a whole and of the examination of the defendant. And what was the court's response? The court's response is there is no testimony in the record at this point related to the known palm print and that's at 300 in the appendix. And he went on to say Mr. Rattler said it was impossible because he wasn't there, not because his palm print was never taken. That was his testimony. The court did not use the words beyond the scope, but the court's ruling and the court's description of what the state of the evidence was to that point described a situation in which that ruling was appropriate. You know, fairness was indeed mentioned and appropriately so because it was unfair to now go beyond the scope because it was defense counsel who had driven the train that limited that scope in the first place. And, of course, as this court knows and said in the Brown case from 2000, there is no absolute right to redirect. It must be limited. It must be confined to only new things brought up on cross-examination. And there was nothing new brought up on cross-examination. In any event, oh, the last thing I should say about I guess that I need to address from the appellant's argument is that I almost don't understand the argument that the court's decision wasn't based on beyond the scope and instead was some kind of sanction because beyond the scope was the objection that was made. It was the description that the court gave. And no one on either side ever used the word sanction, which the appellant now seems to suggest was the basis for the exclusion. Well, I think in both in oral argument just now and the reply brief, the appellant made clear they weren't quite making the sanction argument. They were using it as an analogy. As an analogy. So that's what you have to respond to. And I would suggest that the analogy is not appropriate here. In answer to a question that I think Your Honor asked, the Taylor and Gray-Burris lines of cases, did all deal with sanctions. And I would suggest that those issues are not reached when you're talking about a simple evidentiary ruling. This was a simple evidentiary ruling. Was this beyond the scope? Was it not beyond the scope? Trial courts are vested with great discretion in making those kinds of rulings. And there was no basis for once the court decides that this was indeed beyond the scope, the kinds of factors that go into a sanctions decision aren't asked. It doesn't matter if it was fair or unfair. It's beyond the scope or it's not beyond the scope. Well, what if it's totally beyond the scope, but suddenly the defendant thinks of something and says, imagine this was all about whether the person had a birthmark somewhere or something like that. And it turns out absolutely clear, no doubt about it, that this defendant does not have that birthmark and the defendant didn't think of it until redirect. Yeah, it's unfair. It's unfair for the government, et cetera. But if all that's necessary is for the defendant to raise his arm and show that he has no birthmark and therefore could not have been the bank robber, is there no, that's it? We have to convict that person who's clearly innocent? No, Your Honor. I think the trial court always has the authority. Assume the trial court didn't. Assume the trial court said, I don't care if you're completely innocent because you don't have that birthmark. And there's no doubt about that you don't have the birthmark. But, you know, you exceeded the scope, and I'm really strict about evidence rules. Would you reverse that? I think it depends on the context and whether this could be seen as sandbagging. I mean, presumably the defendant and the defense. Even if it is sandbagging. Even if it is. Assuming that. Is it a manifest miscarriage of justice? Yeah, yeah. I think that would be the test. That's a good way to put it. It could be. I could imagine that. This case was not, that challenge was not made in the trial court, and it wasn't really made that way here. And so it hasn't been, we haven't analyzed that. I haven't seen any cases about this. I have seen no cases about that. Maybe that never happens. And I haven't seen no cases about that, and I haven't, you know, and I have looked. In this case, I think the other important thing, and it factors into the fact that any error, if there was an error, was harmless, is that what the proffer was, was about something of extremely minimal value. To have the appellant say, I don't remember having ink rolled over my palm. I don't remember ever having had that. Yes, I've had fingerprints taken many times, but I don't remember the palm part. Would not have gotten him very far in response to the government expert already saying that they had a known palm print and compared it to the latent, and it was a match. And, of course, yes, there could have been, the government could have rebutted by getting another witness and so on. But the fact that this came up on redirect is significant. If this had come up on direct, I could imagine more of a discussion would have occurred. The government might have objected on the grounds that it was unfair. Not that it was beyond any scope, but you can't get into this now. We have a prior agreement. I've relied on it. The whole case has proceeded this way. And then there would be more in the record about the agreement I would submit. But none of that was brought up on direct. Instead it was defense counsel waited until cross, and it felt almost like an afterthought. But in any event, even the proffer was insignificant. And when you compare that with the strong government case, appellant characterizes it as weak. We don't agree that even the photos were hard to see or grainy. They were broadcast on NBC, and two different witnesses who knew Mr. Rattler for years saw them. And Sua Sponte reported that they knew who the bank robber was. He was identified by four people who knew him quite well, including his probation officer, who saw him once or twice a week for over two years, and a deputy U.S. marshal and two members of the clerk's office where appellant was apparently a frequent filer of things here in this courthouse. So the case against him was quite strong, and under those circumstances any error was harmless and certainly not of any constitutional dimension, as in Johnson or Day, because defendant was not precluded from an entire line of questioning or from making an entire defense. Are there further questions from the panel? No. Because the court did not bravely abuse its discretion, we urge the court to affirm the judgment of the district court. We'll give you another minute. Thank you, Your Honor. First, I would like to point out that the minefield that defense counsel was talking about was the arrest, not the print. Second, while the government doesn't- What do you mean by that? I'm sorry. During the objection to the fingerprint expert's testimony, when defense counsel objected, he was objecting to the arrest, prejudicial evidence, not to evidence of the print. Evidence of the print could have come in. Defense counsel's strategy could have changed, and the defense counsel was allowed to change his strategy. The defense counsel might not have believed, given the close calculus of risks and benefits- Well, how would the print of- I'm a little confused by this. The government begins by asking, well, how do we get these known prints? It's an open-ended question. The answer is going to be, we took him at his arrest. And then there's an objection, and the judge says, sustain leading, and the defense counsel says, no, no, I'm not objecting to it being leading. He's objecting it to being about an arrest. Well, if he- how else are they going to establish the fact that it's a known print, other than by saying, we got this one during an arrest? First of all, we don't dispute that there was, in fact, a document that they purported to be a known print. But they could have put that document in with the expert witness and said, is this what you compared to the print on the TD Bank door? And then the expert- and they could have taken out any reference on that document to an arrest.  Well, and then would it have been uncontested that that was his? And then- well, no, and then he still could have gotten up and said, I don't recall ever giving them my palm print because- No, no, no, I'm sorry, but during the- if that was the position, that that wasn't really his print, wouldn't the fingerprint examiner have been able at this point then to- when he's opened, to be able to say, I got this from an arrest. This is where we got the print. Well, he can say that- well, if it's contested, once it's contested, if- I don't- no, I think the fingerprint experts can say, this is from an official government meeting with Mr. Rattler where his prints were taken. And any reference on the document that is the known print can be edited, redacted- So then it's uncontested that it was taken from Mr. Rattler. The defense counsel would have said that. No, he does not need to- he can still contest that when- though it says Mr. Rattler on this official print, that it's not his, that a mistake was made, that some evidentiary chain of custody with the known print occurred, that the fingerprint examiner was taking 20 people's prints in 15 minutes. I understand that, but he could have testified. You're saying that the fingerprint examiner could have testified that this was- that this finger, this palm print was actually taken at a meeting with Mr. Rattler? Yes. Well, there's not- I have to say, I read this colloquially, I don't see any suggestion that that would have been- Well, the government did not try to put in any evidence of the known print. The government simply elicited the expert's testimony that it was known. That doesn't mean the defense counsel at that time didn't expect necessarily to contest the print, thinking that the risks of doing so might be worse than the benefits of doing so. But at the point of the redirect, you know, once the government had cross-examined, the calculus had changed. I do think- and in that case, that's a justifiable change of defense position. The defense is not required. Absent a stipulation- What was the way in which the calculus didn't change until the cross-examination? Well, I would like to address the government's argument that it's not- that it is beyond the scope. I'll give you a chance, but I'm forgetting about the scope question. How did the cross-examination change the defense calculus? I think that bringing it out on the cross when the government asks- and you heard the testimony from Mr. Guillen, who compared that print with a known certified copy of your fingerprint, palm and fingerprint. You heard that, right? I heard that. And based on his expert opinion- that's expert Guillen from the FBI fingerprint division. It was his opinion that that palm print was yours. Impossible, sir. Impossible because you're telling the jury you were never there. I don't understand how- I'm not following how that- I sort of get your argument about how this goes to whether it's beyond the scope or not. I don't get your argument about how that's different than the fingerprint examiner's testimony. On his own, this is the known palm print of Mr. Rattler. Is your question why it wasn't brought out in Mr. Rattler's direct testimony? If it was a defense strategy? That is my question, yes. I think that calculus was close, and I think that it can shift, and the defense can feel like at this point we need more. We need something. We need to take this risk. And so- We can't make judgments about that here. I mean, if you're saying this is unfair to Mr. Rattler, that it deprived him of his defense, that it was manifestly unjust, whatever test we apply, it can't be just- he may have an ineffective assistance claim against the counsel here, but it doesn't seem like there's anything that the court or the government has done to prevent him from presenting the kind of testimony that he says he needed. Well, the government says that if he had testified on redirect, the government now says had he testified on his direct, excuse me, that they might have objected that it was unfair at that point. So they might have objected based on what they believe was an extra record agreement. I have to say that I don't understand the government's argument that it's beyond the scope because they focus on the question is your fingerprint on the door, but I would focus on the your. Is it your fingerprint on the door? And once the government starts asking those questions, how can it not be within the scope for Mr. Rattler to be able to talk about whether it's his fingerprint there and how his fingerprint can be there? So it's the identification of his fingerprint and the cross-examination about whether it is known, whether it was indeed his fingerprint, whether the expert was right on that point, which is very specific. And so I find it hard to believe that it was not within the scope of the cross. Thank you. If there are no further questions, I appreciate the court's time. Thank you very much. Thank you. I will take the matter under submission.
judges: Garland, Rogers, Ginsburg